No. 25-3034

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

In re Donald J. Trump, in his official capacity as President of the United States, et al.,
*Petitioners-Defendants*,

v.

United States District Court for the Northern District of California,
*Respondent*,

American Federation of Government Employees, AFL-CIO (AFGE), et al.,
*Real Parties in Interest-Plaintiffs*.

---

ON PETITION FOR WRIT OF MANDAMUS TO THE UNITED STATES
DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA
No. 3:25-cv-03698-SI
The Honorable Judge Susan Illston

---

**SUPPLEMENTAL ADDENDUM TO REAL PARTIES IN INTEREST-PLAINTIFFS' OPPOSITION TO MOTION FOR STAY PENDING RESOLUTION OF MANDAMUS PETITION**

---

Elena Goldstein
Skye Perryman
Tsuki Hoshijima
DEMOCRACY FORWARD
FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
Tel.: (202) 448-9090
egoldstein@democracyforward.org
sperryman@democracyforward.org

Stacey M. Leyton
Barbara J. Chisholm
Danielle E. Leonard
Corinne F. Johnson
Alice X. Wang
Robin S. Tholin
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel.: (415) 421-7151
sleyton@altber.com
dleonard@altber.com

*Attorneys for Real Parties in Interest-Plaintiffs\**
*\*additional counsel and affiliations on signature pages of opposition brief*

## INDEX FOR SUPPLEMENTAL ADDENDUM

| Doc. | Description | Date | Page |
|------|-------------|------|------|
| 1 | Order re: Production of Certain Discovery Documents, Dkt. 109 | 5/15/2025 | Supp.Add.001 |
| 2 | Excerpts of Supplemental Declaration of Jesus Soriano, Dkt. 96-1 | 5/13/2025 | Supp.Add.006 |

United States District Court
Northern District of California

1

2

3

4 UNITED STATES DISTRICT COURT

5 NORTHERN DISTRICT OF CALIFORNIA

6

7 AMERICAN FEDERATION OF        Case No.  25-cv-03698-SI
GOVERNMENT EMPLOYEES, AFL-CIO,
8 et al.,
                                **ORDER RE: PRODUCTION OF**
9            Plaintiffs,         **CERTAIN DISCOVERY DOCUMENTS**

10      v.                       Re: Dkt. No. 88

11 DONALD J. TRUMP, et al.,

12            Defendants.

13

14        This order addresses the government's request to reconsider, rescind, and/or otherwise

15 modify the Court's order that the government must produce Agency RIF[1] and Reorganization Plans

16 (ARRPs) on an expedited basis.  Pursuant to the President's Executive Order 14210 and a February

17 26, 2025 joint memorandum, the Office of Management and Budget (OMB) and the Office of

18 Personnel Management (OPM) required the heads of federal departments and agencies to submit

19 "Phase 1" and "Phase 2" ARRPs by March 13 and April 14. Dkt. No. 37-1, Exs. A, B.  In its May

20 9, 2025 order granting a temporary restraining order, the Court ordered the ARRPs of the federal

21 agency defendants produced (both the ARRPs the agencies submitted and the versions that OMB

22 and OPM approved).  Dkt. No. 85 at 40.

23        The government now argues that these plans "are simply irrelevant to future proceedings in

24 this Court," that the plans are covered by the deliberative process privilege, and that "[n]othing in

25 an ARRP irrevocably commits an agency to taking any specific step."  Dkt. No. 88 ("Mot.") at 3, 4

26 & n.4.  Meanwhile, heads of defendant agencies have announced their intent to lay off large swathes

27 ────────────────

28        [1] A "RIF" is a reduction in force.

of their agencies, and employees are receiving RIF notices.[2]  Based on the positions the parties have staked out thus far, it is clear this case is headed toward a factual dispute: did President Trump, OPM, OMB, and DOGE simply instruct agencies *to begin planning* for RIFs in the future and *provide guidance* on how to make those plans?  Or are these defendants *directing* agencies to make "large-scale" RIFs and to make them now?  If the government's position is to be believed—that the ARRPs are non-final planning documents that do not commit an agency to take any specific action— that begs another question: pursuant to *what*, then, are the agencies implementing their large-scale RIFs?

On May 9, 2025, this Court issued a temporary restraining order putting in place a two-week pause on implementation of RIFs at the defendant agencies, in order to preserve the status quo while this case can be more fully litigated.  At that point, the Court had received more than 1,000 pages of declarations in support of plaintiffs' position and no evidence to support the government's contentions.  The temporary restraining order is set to expire on May 23, 2025, and the Court set a preliminary injunction hearing for May 22 at 10:30 a.m.

Given the gravity of what defendants assert is at issue, and in the interest of transparency, the Court now reconsiders the question of whether defendants must provide copies of ARRPs to plaintiffs and the Court.

**BACKGROUND**

In its May 9, 2025 order, the Court ordered defendants to provide to the Court and to plaintiffs the following categories of documents: "(1) the versions of all defendant agency ARRPs submitted to OMB and OPM, (2) the versions of all defendant agency ARRPs approved by OMB and OPM, (3) any agency applications for waivers of statutorily-mandated RIF notice periods, and

---

[2] *See, e.g.*, Am. Compl. ¶ 20 & n.11 (March 27 press release that the Department of Health and Human Services plans to RIF 10,000 employees), ¶ 20 n. 13 (Environmental Protection Agency RIF notices sent to certain staff, and agency head targeting 65% budget cut), ¶ 213 & n.63 (March 21 Small Business Administration announcement of plan to reduce workforce by 43%, pursuant to Executive Order 14210), ¶¶ 251-252 (National Science Foundation's 37 divisions are being abolished and RIF notices to some staff went out on May 9).

2

United States District Court
Northern District of California

(4) any responses by OMB or OPM to such waiver requests[.]"[3]  Dkt. No. 85 at 40.  The Court

ordered this production because it "requires more information to evaluate the individual ARRPs and

what roles OMB, OPM, and DOGE have played in shaping them."  *Id.* at 39.  The Court set a

production deadline of 4:00 p.m. (PDT) on May 13, 2025.  *Id.*

On May 11, 2025, defendants moved for a protective order or in the alternative for

reconsideration and request for an immediate administrative stay of the Court's discovery order.

Dkt. No. 88 ("Mot.").  Defendants support their arguments with a declaration from Stephen Billy, a

Senior Advisor in the Office of Management and Budget.  Dkt. No. 88-1 ("Decl. Billy").

The Court set a briefing schedule on defendants' motion and stayed the deadline for the

government to produce the materials until after the Court ruled on the motion.  Dkt. No. 92.

Plaintiffs have filed an opposition and the government has filed a reply.  Dkt. Nos. 96, 103.

## DISCUSSION

Defendants invoke the deliberative process privilege to argue that they should not be

compelled to release the ARRPs.  As the Ninth Circuit has explained,

> This privilege permits the government to withhold documents that reflect advisory
> opinions, recommendations and deliberations comprising part of a process by which
> government decisions and policies are formulated. *NLRB v. Sears, Roebuck & Co.,*
> 421 U.S. 132, 150, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975). It was developed to
> promote frank and independent discussion among those responsible for making
> governmental decisions, *Environmental Protection Agency v. Mink,* 410 U.S. 73, 87,
> 93 S.Ct. 827, 836, 35 L.Ed.2d 119 (1973), and also to protect against premature
> disclosure of proposed agency policies or decisions. *Coastal States Gas Corp. v.
> Department of Energy,* 617 F.2d 854, 866 (D.C. Cir.1980). The ultimate purpose of
> the privilege is to protect the quality of agency decisions. *Sears,* 421 U.S. at 151, 95
> S.Ct. at 1517.

*F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984).

To resolve whether the government may assert the deliberative process privilege to avoid

production of ARRPs involves asking several questions.  First, are the documents relevant to the

litigation?  If so, are the documents of the nature to be covered by the privilege—that is, are they

_____

[3] Plaintiffs had asked for disclosure of "current versions" of ARRPs.  The Court provided
greater specificity in its order to assist in evaluating one of the core factual disputes between the
parties: the extent of OMB/OPM/DOGE's involvement in directing the content of the ARRPs.

3

1    pre-decisional and deliberative?  Even if so, should the privilege be overridden by other

2    considerations?[4]  Finally, if the documents are ordered produced, should their disclosure be limited

3    by a protective order?

4          The challenge facing the Court is that the parties characterize the contents of the ARRPs in

5    starkly different terms.  According to the government's declaration, "Nothing in an ARRP, or its

6    review or approval by OPM or OMB, binds the agency to any particular course of action."  Decl.

7    Billy ¶ 5.  Moreover, "[a]n ARRP is never final and may change drastically as the agency's priorities

8    and thinking changes."  Mot. at 4 (citing Decl. Billy ¶ 6).  The government further asserts that

9    ARRPs "include highly sensitive information that would seriously undermine agency operations if

10   they were released," including labor negotiation strategy, reorganization plans that might hurt

11   agency recruitment and retention, and plans for regulatory changes or future appropriations requests.

12   Decl. Billy ¶ 4.  On the other hand, the evidence presented by plaintiffs so far in this litigation

13   suggest the plans are final agency decisions that have led to quick, tangible actions with widespread

14   effects.  Plaintiffs have received one ARRP from a non-defendant federal agency (the National

15   Endowment for the Humanities) and the contents of that plan do not neatly align with the

16   government's characterization of ARRPs in general.  *See* Dkt. No. 96-1, Ex. 1, Attachs. C, D.  The

17   Court sees no "highly sensitive information [that] would seriously undermine agency operations if

18   they were released," *see* Decl. Billy ¶ 4, though the Court acknowledges the government's position

19   that this ARRP is not representative of ARRPs in general and that plaintiffs attached only the Phase

20   2 cover sheet, not the full Phase 2 ARRP.

21         To assess whether the deliberative process privilege applies to the ARRPs of the federal

22   agency defendants in this case, the Court would benefit from a better understanding of their contents.

23   The Court therefore ORDERS as follows:

24         By Monday, May 19, 2025 at 12:00 p.m. (PDT), defendants shall submit to the Court for *in*

25

26

27         [4] The deliberative process privilege is qualified, not absolute.  *See Warner Commc'ns*, 742
     F.2d at 1161.  "A litigant may obtain deliberative materials if his or her need for the materials and
28   the need for accurate fact-finding override the government's interest in non-disclosure."  *Id.*
     (citations omitted).

4

*camera* review the following documents for *four federal agency defendants*:[5] (1) the versions of ARRPs submitted to OMB and OPM and (2) the versions of ARRPs approved by OMB and/or OPM. Plaintiffs shall designate two of the agencies for which the ARRPs are to be produced and shall provide those agency names to defendants by 10:00 a.m. (PDT) on Friday, May 16, 2025. Defendants may designate the other two agencies for which it will provide ARRPs.

By Monday, May 19, 2025 at 12:00 p.m. (PDT), defendants will also provide the same ARRPs to plaintiffs' counsel, but plaintiffs' counsel may not share the plans or their contents with their clients or any third parties unless or until the Court orders otherwise.

The parties should be prepared to argue the merits of applying the deliberative process privilege to the ARRPs at the May 22, 2025 hearing.

**IT IS SO ORDERED**.

Dated:  May 15, 2025

_____

SUSAN ILLSTON
United States District Judge

United States District Court
Northern District of California

---

[5] Documents for *in camera* review may be mailed or hand-delivered to the Clerk's Office, clearly stamped "DO NOT FILE—IN CAMERA REVIEW."

5

Stacey M. Leyton (SBN 203827)
Barbara J. Chisholm (SBN 224656)
Danielle Leonard (SBN 218201)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel. (415) 421-7151
Fax (415) 362-8064
sleyton@altber.com
dleonard@altber.com
bchisholm@altber.com

Elena Goldstein (pro hac vice)
Skye Perryman (pro hac vice)
Tsuki Hoshijima (pro hac vice)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
Tel: (202) 448-9090
Fax: (202) 796-4426
egoldstein@democracyforward.org
sperryman@democracyforward.org
thoshijima@democracyforward.org

*Attorneys for Plaintiffs*

[Additional Counsel not listed]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., | Case No. 3:25-cv-03698-SI |
| Plaintiffs, | **SUPPLEMENTAL DECLARATION OF JESUS SORIANO** |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., | |
| Defendants. | |

**DECLARATION OF JESUS SORIANO**

I, Jesus Soriano, declare as follows:

1.      I am over 18 years of age and competent to give this declaration. This declaration is based on my personal knowledge, information, and belief.  I am providing this declaration in my capacity as a union officer.

2.      I am the President of the American Federation of Government Employees Local 3404 ("Local 3404" or "Union").  I have been involved in Union leadership for 10 years.

3.      Local 3404 represents a bargaining unit of approximately 1,746 civil servants who work for the National Science Foundation ("NSF"), the National Endowment for the Humanities ("NEH"), the National Endowment for the Arts, U.S. Department of Agriculture's Economic Research Services and National Institute of Food and Agriculture, the U.S. Geological Survey, and the Institute of Museum and Library Services.

4.      I am also a Program Director at NSF, where I have worked for 13 years.  In my role, I review proposals for scientific research and recommend proposals for NSF funding.  My work supports the development of groundbreaking research and emerging technologies.

5.      Through my role as President of Local 3404, I have received and reviewed a memorandum dated April 23, 2025, from NEH, which was provided by that agency in response to a request for information regarding NEH's Reductions in Force ("RIFs") filed by the Vice President of Local 3404 on April 17, 2025.  A true and correct copy of the response is attached hereto as Exhibit 1, along with excerpts from the original attachments to that document.

6.      The attachments to the NEH response included both the March 13, 2025, and April 14, 2025, Agency RIF and Reorganization Plans ("ARRPs") that NEH submitted to OPM and OMB for approval (at internal Attachments C and D to the response.)

7.      The NEH response explained (Ex. 1, pp. 2, 4, 5):

**In accordance with President Trump's February 11, 2025 Executive Order titled "Implementing The President's 'Department of Government Efficiency' Workforce Optimization Initiative," the Department of Government Efficiency (DOGE) instructed NEH to reduce the agency's workforce through a Reduction In Force (RIF).**

…

**The Acting Chairman, under the direction of the DOGE team, directed that RIF notices be sent to employees.**

…

**In accordance with President Trump's February 11, 2025 Executive Order titled "Implementing The President's 'Department of Government Efficiency' Workforce Optimization Initiative," the Department of Government Efficiency (DOGE) instructed NEH to reduce the agency's workforce through a Reduction In Force (RIF).**

8.      The NEH response to the Union's request for "All documents reflecting the Agency's plans to conduct and implement a reduction in force since January 20, 2025" included the following (Ex. 1 at pp. 5-6):

**NEH Response: Please see Attachments C-I.**

**Attachment C: Agency RIF and Reorganization Plan ("ARRP") Phase 1**

**Attachment D: ARRP Phase 2**

**• Please note that the ARP Phase 1 was a pre-decisional document and submitted to OPM for approval. After submission of that report, DOGE instructed NEH to conduct a RIF on an expedited basis.**

9.      The March 13, 2025, ARRP included a proposed agency target for reduction in full-time equivalent ("FTE") positions of 20-25% of staff.  The tools proposed to reach that goal included the continuation of the current hiring freeze, attrition through enhanced policies governing employee performance and conduct, attrition through the termination or non-renewal of term or limited positions, and attrition through RIFs.  Ex. 1, Attachment C.

10.      I have been informed in my capacity as a union leader, that on April 1, 2025, NEH directors informed staff that DOGE had met with NEH's senior leadership on March 28 regarding the ARRP and recommended a RIF of at least 70% of staff.  NEH directors also told staff that DOGE aimed to cut a significant portion of programmatic activities, with the goal of identifying $170 million in grant funds to "claw back."

11.     On April 9, 2025, all NEH staff received a memo from Acting Chairman Michael McDonald (attached to the NEH information request response as Attachment G).  The memo indicated that the agency was "undertaking a multi-step approach to restructuring its internal organization."

12.     On April 10, 2025, the Union received a RIF Notice for NEH employees.

13.     As part of the documentation shared through the formal request for information, the Union received what NEH describes as the April 14, 2025, ARRP (Ex. 1, Attachment D).  The document is in the form of a spreadsheet that appears to be a model format required by OMB/OPM.  This spreadsheet document reflects the significant cuts that NEH said were ordered by DOGE.  Specifically, in implementing its "Phase 2 ARRP," NEH issued RIF notices to 116 employees out of the approximately 180 employees who work at the agency, which is a RIF of around 64% of staff.  Ex. 1, Attachment D.  Other employees opted into the Deferred Resignation Program.  *Id.*

14.     As part of the documentation shared through the formal request for information, the Union received an "NEH Post-RIF Org Structure" chart (Ex. 1, Attachment E) that lays out a proposed agency structure.  The original eight program offices (Office of Challenge Programs, Office of Data and Evaluation, Office of Digital Humanities, Division of Education Programs, Office of Federal/State Partnership, Division of Preservation and Access, Division of Public Programs, and Division of Research Programs) would be collapsed into four:  Office of Federal/State Partnership, Infrastructure, Lifelong Learning, and Research.  Many administrative offices were likewise consolidated in this proposed reorganization.

15.     I have also obtained information regarding NSF's RIFs through my roles as President of Local 3404 and as an NSF employee.  On the morning of May 9, 2025, I attended a meeting with NSF leadership and employees from the Division of Equity for Excellence in STEM, where leadership announced that all the positions in that Division were being eliminated.  NSF leadership refused to provide an explanation for why they eliminated the entire Division and all of its employees.  Their statements suggested that they were following orders from OPM, OMB, and DOGE.  Based on earlier conversations with NSF leadership, my understanding is that the RIF of

**Supp.Add.009**

the Division was not originally included in the Phase 1 ARRP that NSF had submitted for OMB and OPM approval, and that OPM, OMB, and DOGE instructed NSF leadership to eliminate the Division after reviewing and rejecting the Phase 1 ARRP.

16.     Later that day, the employees in the Division of Equity for Excellence in STEM received RIF notices. A true and correct copy of a RIF notice to an employee in that Division, with the personal information redacted, is attached hereto as Exhibit 2. The RIF notice states that "[t]his RIF is necessary to implement the abolishment of the Division of Equity for Excellence in STEM within the Directorate for STEM Education." Ex. 2, p. 1. The notice placed the employee on administrative leave, effective May 16, through the date of separation from NSF on July 8.

17.     The same day, NSF's Office of the Director emailed all NSF employees to explain the agency's RIFs and reorganization. Those actions included terminating 84 out of 143 Senior Executive Service positions and eliminating all employees in the Division of Equity for Excellence in STEM, as part of NSF's RIF.

18.     On May 12, 2025, NSF sent a letter to staff in the Division of Equity for Excellence in STEM, stating that NSF is "temporarily suspend[ing]" the RIF of the Division's employees until at least May 23 to comply with the temporary restraining order issued in this case. A true and correct copy of the letter is attached hereto as Exhibit 3. The letter instructed employees who were placed on administrative leave to continue working until further notice. Ex. 3, p. 1.

19.     On May 13, 2025, NSF sent a memorandum to all agency staff, stating that it was suspending the restructuring actions discussed in the May 9, 2025, email, which included the RIFs of Senior Executive Service and the Division of Equity for Excellence in STEM employees, to comply with the temporary restraining order issued in this case. A true and correct copy of the letter is attached hereto as Exhibit 4.

20.     In addition, I have read news reports of NSF's broader plans to reorganize the agency and cut staff. On May 8, 2025, *Science* reported that NSF will abolish 37 divisions across all eight NSF directorates and will "drastically reduce[]" the number of programs within those divisions. A true and correct copy of the article is attached hereto as Exhibit 5. NSF's eight directorates support research and education across the various scientific and engineering

1   disciplines.  For example, NSF has a Directorate for Biological Sciences, a Directorate for

2   Engineering, and a Directorate for Mathematical and Physical Sciences.  According to the article,

3   the current directors and deputy directors of the Directorates "will lose their titles and might be

4   reassigned to other positions at the agency or elsewhere in the federal government." Ex. 5, p. 2.

5   The article also reported that NSF is expected to send RIF notices to an "unspecified number of its

6   1700-member staff," and "[t]he remaining staff and programs will be assigned to one of the eight,

7   smaller directorates." *Id.*

8        I declare under penalty of perjury under the laws of the United States that the foregoing is

9   true and correct.  Executed May 13, 2025, in Alexandria, Virginia.

10

11

12

13

14   _____

15   Jesus Soriano

16

17

18

19

20

21

22

23

24

25

26

27

28

Declaration of Jesus Soriano                      **Supp.Add.011**

# Exhibit 1



## NATIONAL ENDOWMENT FOR THE HUMANITIES

**MEMORANDUM**

April 23, 2025

**TO:**       American Federation of Government Employees (AFGE), Local 3403,
              Joanna Capps, Vice President

**FROM:**     NEH, Labor Management: Derika Ferdinand Walker, Director, Office of
              Human Resources; Pranita Raghavan, Assistant Chair for Planning and
              Operations and Adam Wolfson, Assistant Chair for Programs

**SUBJECT:**  Response to Request for Information

This memorandum acknowledges receipt of AFGE Local 3403's formal request for
information dated April 17, 2025. The agency remains committed to maintaining open
and collaborative labor relations in accordance with the Collective Bargaining Agreement
(CBA) between NEH and Local 3403.

Please see below for the agency's responses to requests 3(a) – (n).

Request 3a: A list of all bargaining unit employees that have received specific notices of a
RIF, which includes the following information:
i. Full name of the employee;
ii. Entry on Duty ("EOD") date;
iii. Service Computation Date ("SCD"), if applicable;
iv. Position Title;
v. Pay Plan;
vi. Occupational Series/Grade;
vii. Bargaining Unit State Code;
viii. Duty Station location;
ix. Stated reason for specific RIF action.

**NEH Response: The agency is unable to provide the employee-specific information
requested in 3(a)(i)-(viii). The information responsive to these items is barred from
disclosure by the Privacy Act and is not subject to the Freedom of Information Act
under exemption 6, as disclosure "would constitute a clearly unwarranted invasion**

**Supp.Add.013**

of personal privacy." The agency would be willing to disclose certain requested information in a redacted or sanitized format.

**NEH Response to 3(a)(ix): In accordance with President Trump's February 11, 2025 Executive Order titled "Implementing The President's 'Department of Government Efficiency' Workforce Optimization Initiative," the Department of Government Efficiency (DOGE) instructed NEH to reduce the agency's workforce through a Reduction In Force (RIF).**

Request 3b: A complete and up-to-date list of all competitive areas defined by the Agency, as required by 5 C.F.R. § 351.402, with a list of all Agency employees who fall within each competitive area.

**NEH Response: 1) National Endowment for the Humanities, Nationwide, except Washington, DC, local commuting area (50-mile radius), included a total number of 39 employees.**

**2) National Endowment for the Humanities, Washington, DC, included a total number of 143 employees.**

**The agency is unable to provide the employee-specific information requested. The information responsive to these items is barred from disclosure by the Privacy Act and is not subject to the Freedom of Information Act under exemption 6, as disclosure "would constitute a clearly unwarranted invasion of personal privacy."**

Request 3c: A complete and up-to-date list of all competitive levels defined by the Agency, as required by 5 C.F.R. § 351.403, with a list of all Agency employees who fall within each competitive level.

**NEH Response: See Attachment A. The agency is unable to provide the employee-specific information requested. The information responsive to these items is barred from disclosure by the Privacy Act and is not subject to the Freedom of Information Act under exemption 6, as disclosure "would constitute a clearly unwarranted invasion of personal privacy."**

Request 3d: The retention registers compiled by the Agency since January 20, 2025, to determine which Agency employees were sent a specific RIF notice, as required by 5 C.F.R. Part 351, including the following information:
i. The employee's tenure group, competitive level, and original SCD;
ii. The employee's veteran preference;
iii. The employee's length of service;

Supp.Add.014

iv. The amount of credit years for performance and, if applicable, the employee's adjusted SCD;
v. The employee's three most recent performance ratings received during the last four years, and/or the applicable performance ratings used to compute credit for performance.

**NEH Response: The agency is unable to provide the employee-specific information requested. The information responsive to these items is barred from disclosure by the Privacy Act and is not subject to the Freedom of Information Act under exemption 6, as disclosure "would constitute a clearly unwarranted invasion of personal privacy."**

**Article 26, Section 4 of the Collective Bargaining Agreement between NEH and Local 3403 states, "[a]n employee receiving a specific RIF notice may review the retention register for his or her competitive level and related records as well as the retention registers for other positions that could affect the composition of the employee's competitive level and/or the determination of the employee's assignment rights. The Agency agrees to provide, upon request, individual counseling to an employee concerning the basis for determining the competitive level and assignment rights for his or her position." An employee who would like to review the retention register for his/her records may contact humanresources@neh.gov to make an appointment.**

Request 3e: A list of all Agency employees who have not received specific RIF notices, including the following information for each such Agency employee:
i. Full name of the employee;
ii. EOD date;
iii. SCD, if applicable;
iv. Position title;
v. Pay plan;
vi. Occupational Series/Grade;
vii. Bargaining Unit Status Code;
viii. Duty station location;
ix. Competitive Area;
x. Competitive Level.

**NEH Response: The RIF process was conducted based on positions rather than individual employees. The agency is unable to provide the employee-specific information requested. The information responsive to these items is barred from disclosure by the Privacy Act and is not subject to the Freedom of Information Act under exemption 6, as disclosure "would constitute a clearly unwarranted invasion of personal privacy."**

3

Supp.Add.015

Request 3f: Confirmation and attendant evidence that the Agency has complied with the requirement at 5 C.F.R. § 351.803(a) to provide eligible employees with an estimate of their severance pay. Specifically, the Union requests that the Agency demonstrate its compliance with the statutory requirement that it estimate severance pay, not that it "empowers" employees to estimate severance pay on their own.

**NEH Response: The agency provided each eligible employee with an estimate of his/her severance pay, in compliance with 5 C.F.R. § 351.803(a). The agency is unable to provide the employee-specific severance pay estimates as that information is barred from disclosure by the Privacy Act and is not subject to the Freedom of Information Act under exemption 6, as disclosure "would constitute a clearly unwarranted invasion of personal privacy."**

Request 3g: Confirmation and attendant evidence that the Agency has complied with the notice requirements at 5 C.F.R. § 351.803(b).

**NEH Response: The agency provided separation notices to 50 or more employees in the competitive area of National Endowment for the Humanities, Washington, DC.**

**NEH complied with the requirements of 5 C.F.R. § 351.803(b) by sending notice to the appropriate parties in Washington, DC.**

Request 3h: A list of all Agency officials and/or other government employees and/or other individuals responsible for drafting and transmitting any and all specific RIF notices sent to bargaining unit employees since January 20, 2025.

**NEH Response: Agency officials and/or other government employees who participated in the drafting of the RIF notices included the Director and Deputy Director, Office of Human Resources, Assistant Chair for Planning and Operations, Acting General Counsel, and Acting Chairman. The Office of Human Resources supported the transmission of RIF notifications.**

Request 3i: A list of all Agency officials and/or other government employees and/or other individuals who directed that specific RIF notices be sent to bargaining unit employees since January 20, 2025.

**NEH Response: The Acting Chairman, under the direction of the DOGE team, directed that RIF notices be sent to employees.**

Request 3j: A table or chart identifying the current chain of command in leadership at the Agency.

400 7th STREET, SW, WASHINGTON, DC 20506 | NEH.GOV

**NEH Response: Please see Attachment B, the current organizational chart. NEH is currently led by Acting Chairman Michael P. McDonald.**

Request 3k: A list of individuals affiliated with the U.S. DOGE Service Temporary Organization, known as the Department of Government Efficiency ("DOGE"), who have in any way communicated with Agency leadership concerning the RIF notification to bargaining unit employees since January 20, 2025.

**NEH Response: The following individuals have communicated with NEH regarding the RIF notifications:**

- **Justin Fox**
- **Nate Cavanaugh**

Request 3l: A list of individuals affiliated with DOGE, who have access to Agency technology systems and digital infrastructure.

**NEH Response: The following individuals have access to NEH technology systems, including eGMS and Office 365:**

- **Justin Fox**
- **Nate Cavanaugh**

Request 3m: All documents related to any cost-savings analysis or analysis of fraud, waste, or abuse of government resources that was conducted in relation to the decision to include certain bargaining unit employees in a RIF since January 20, 2025.

**NEH Response: In accordance with President Trump's February 11, 2025 Executive Order titled "Implementing The President's 'Department of Government Efficiency' Workforce Optimization Initiative," the Department of Government Efficiency (DOGE) instructed NEH to reduce the agency's workforce through a Reduction In Force (RIF).**

**NEH followed the Office of Personnel Management (OPM) RIF procedures and all applicable federal regulations in carrying out the RIF.**

Request 3n: All documents reflecting the Agency's plans to conduct and implement a reduction in force since January 20, 2025.

**NEH Response: Please see Attachments C-I.**

**Attachment C: Agency RIF and Reorganization Plan ("ARRP") Phase 1**

**Attachment D: ARRP Phase 2**

5

Supp.Add.017

- **Please note that the ARP Phase 1 was a pre-decisional document and submitted to OPM for approval. After submission of that report, DOGE instructed NEH to conduct a RIF on an expedited basis.**

**Attachment E: OPM Waiver Request**

**Attachment F: OPM Waiver Approval**

**Attachment G: Letter from Acting Chairman McDonald dated April 9, 2025**

**Attachment H: Memo from the Office of the Acting Chairman dated April 18, 2025**

**Attachment I: Memo from NEH Office of Human Resources dated April 18, 2025**

400 7th STREET, SW, WASHINGTON, DC 20506  |  NEH.GOV

# Attachment B



Supp.Add.020

# Attachment C



OFFICE OF THE CHAIR

To:     Office of Personnel Management at tracking@opm.gov;
        Office of Management and Budget at workforce@omb.eop.gov

From:  Michael McDonald, Acting Chairman

Date:   March 13, 2025

This memorandum responds to President Trump's February 19, 2025 Executive Order *Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative* (*Workforce Optimization*) (EO), and OMB/OPM's associated February 26, 2025 guidance, Guidance on Agency RIF and Reorganization Plans Requested by the EO (Guidance). Specifically, it contains the National Endowment for the Humanities (NEH) Phase 1 Agency RIF and Reorganization Plan (ARRP), focusing on initial agency cuts and reductions.

## Phase 1 ARRP

Per the Guidance, the Phase 1 ARRP should identify:

1. **A list of agency subcomponents or offices that provide direct services to citizens. Such subcomponents or offices should be included in ARRPs to improve services to citizens while eliminating costs and reducing the size of the federal government. But for service delivery subcomponents or offices, implementation shall not begin until certified by OMB and OPM as resulting in a positive effect on the delivery of such services.**

NEH does not have subcomponents and does not provide direct services to citizens (such as Social Security, Medicare, and veterans' health care). Congress created NEH with a mission to provide grants to non-profit organizations and individuals working in the humanities.

2. **Any statutes that establish the agency, or subcomponents of the agency, as statutorily required entities. Agency leadership must confirm statutes have not been interpreted in a way that expands requirements beyond what the statute actually requires. Instead, statutes should be interpreted to cover only what functions they explicitly require.**

20 USC 956(a) establishes the National Endowment for the Humanities (NEH), and 20 USC 957(a) creates the National Council on the Humanities, NEH's twenty-six-member advisory board. NEH's authorizing legislation gives broad discretion to the Chairman to carry out the

1

Supp.Add.022

agency's statutory functions to support scholarly works, programs, and research in the humanities; *see* 20 USC 956(c)(1)-(10), 20 USC 956(f), 20 USC 956(h).

20 USC 951 enumerates the 'findings and purposes' that underlie NEH, and its sister agencies.  In it, Congress declares, *inter alia*, that:

> (2) The encouragement and support of national progress and scholarship in the humanities and the arts, while primarily a matter for private and local initiative, are also appropriate matters of concern to the Federal Government;...

> (5) It is necessary and appropriate for the Federal Government to complement, assist, and add to programs for the advancement of the humanities and the arts by local, State, regional, and private agencies and their organizations...Such funding should contribute to public support and confidence in the use of taxpayer funds. Public funds provided by the Federal Government must ultimately serve public purposes the Congress defines;...

> (8) The world leadership which has come to the United States cannot rest solely upon superior power, wealth, and technology, but must be solidly founded upon worldwide respect and admiration for the Nation's high qualities as a leader in the realm of ideas and of the spirit.;...and...

> (11) To fulfill its educational mission, achieve an orderly continuation of free society, and provide models of excellence to the American people, the Federal Government must transmit the achievement and values of civilization from the past via the present to the future, and make widely available the greatest achievements of art.

NEH confirms that it has not interpreted its statutes beyond what they require.

> **3.  All agency components and employees performing functions not mandated by statute or regulation who are not typically designated as essential during a lapse in appropriations (because the functions performed by such employees do not fall under an exception to the ADA) using the Agency Contingency Plans submitted to OMB in 2019 referenced above.**

NEH does not have agency components or sub-agencies.  NEH's Chairman and its advisory board, the National Council on the Humanities, are statutorily required. 20 USC 956(b); 20 USC 957(a). The NEH Chairman has administrative authority to hire staff to carry out the agency's statutory functions, including to establish program offices to run grant programs in different humanities fields.  The following positions are typically designated as essential during a lapse in appropriations: Chairman; Senior Deputy Chairman; Chief of Staff; Assistant Chairman for Planning and Operations; Director, Office of Administrative Services; Director, Office of Human Resources; Systems Operations Supervisor, Office of Information Technology; General Counsel.  NEH may designate the following positions on an ad hoc basis: Assistant Chairman for Programs; the Director of Accounting; the Director of Grant Management; and the Director of Planning and Budget.

4. **Whether the agency or any of its subcomponents should be eliminated or consolidated; and which specific subcomponents or functions, if any, should be expanded to deliver on the President's priorities.**

There are a number of NEH offices that current leadership believe should be eliminated. Almost all of them were created during the Biden Administration.  They are: the Office of Partnerships and Strategic Initiatives; the Office of Native and Indigenous Affairs; the Office of Outreach; the Office of Challenge Programs; and the Office of Data and Evaluation. (NEH is required by statute to collect humanities data and anticipates consolidating such efforts within its existing Office of Planning and Budget, where it has historically been located.)

There are a number of NEH program offices that current leadership believe should be consolidated. NEH is considering reducing the number of program offices by approximately fifty percent – going from eight to four. NEH is also considering consolidating some of its administrative offices, to achieve greater efficiencies.

5. **The specific tools the agency intends to use to achieve efficiencies, including, as to each, the number of FTEs reduced and any potential savings or costs associated with such actions in Fiscal Years 2025, 2026 and 2027:**

   a. Continuation of the current hiring freeze;
   b. Regular attrition (e.g., retirement, movement between agencies and the private sector);
   c. Attrition through enhanced policies governing employee performance and conduct;
   d. Attrition through the termination or non-renewal of term or limited positions or reemployed annuitants;
   e. Attrition achieved by RIFs. Please refer to Appendix 1 for specific steps and timing. For purposes of the Phase 1 ARRP, the agency should include the following information:

      i. The competitive areas and organizational components that the agency has targeted or will target for initial RIFs, and

         As noted above, NEH is considering eliminating the following offices: the Office of Partnerships and Strategic Initiatives; the Office of Native and Indigenous Affairs; the Office of Outreach; the Office of Challenge Programs; and the Office of Data and Evaluation.

      ii. The agency's target for reductions in FTE positions via RIFs.

         NEH's target for reductions in FTE positions via the various staff reduction tools is twenty to twenty-five percent of the staff.

NEH intends to use all the tools listed above to achieve efficiencies and effectuate the principles in President Trump's Executive Order *Implementing The President's "Department of Government Efficiency" Workforce Optimization Initiative* (*Workforce Optimization*), and

3

Supp.Add.024

OMB/OPM's associated February 26, 2025 guidance, Guidance on Agency RIF and Reorganization Plans.

6.  **A list by job position of all positions categorized as essential for purposes of exclusion from large-scale RIFs, including the number per each job position and total by agency and subcomponent.**

NEH is a grant making agency.  In order for NEH to continue its statutory function of making grants it will need program and administrative staff to do so.  However, NEH plans to reduce the number of program offices (and thereby the number of individual program officers), and several other offices added during the Biden Administration, in addition to using the other tools in #5, above, to carry out its statutory functions in a more streamlined and efficient manner.

7.  **The agency's suggested plan for congressional engagement to gather input and agreement on major restructuring efforts and the movement of fundings between accounts, as applicable, including compliance with any congressional notification requirements.**

NEH does not have Congressional notification requirements to restructure the agency. As appropriate, and as necessary when funds are being moved between accounts, NEH intends to consult with its Congressional appropriations and authorizing committees about restructuring plans.

8.  **The agency's timetable and plan for implementing each part of its Phase 1 ARRP.**

NEH will begin to implement Phase 1 of its ARRP immediately.  NEH has requested approval for the VERA/VSIP authority, and will offer that to staff as soon as possible.

4

Supp.Add.025

# Attachment D

 **Outlook**

---

**NEH Phase 2 ARRP Submission**

---

**From** Raghavan, Pranita <praghavan@neh.gov>

**Date** Mon 4/14/2025 6:06 PM

**To** tracking@opm.gov <tracking@opm.gov>; workforce@omb.eop.gov <workforce@omb.eop.gov>

**Cc** Ferdinand Walker, Derika <dfwalker@neh.gov>; McDonald, Michael <mmcdonald@neh.gov>

📎 1 attachment (14 KB)

NEH ARRP Phase 2 Cover Page 1.xlsx;

Hello,

On behalf of the Acting Chairman of the National Endowment for the Humanities (NEH), please see attached for NEH's ARRP Phase 2 submission. The Department of Government Efficiency (DOGE) instructed NEH to start the workforce restructuring and Reduction in Force (RIF) processes last week. Accordingly, NEH issued 116 RIF notices and terminated 4 intermittent employees on April 10, 2025. The effective date of the RIF is June 10, 2025. In addition, three employees opted into the Deferred Resignation Program and will be paid as FTEs through September 30, 2025.  Therefore, NEH is already in process of completing its Phase 2 workforce restructuring process in compliance with the Executive Order and approved by DOGE.

Please let us know if you have any questions.

Office of the Acting Chairman
National Endowment for the Humanities

**Agency ARRP Phase 2 Cover Sheet**

*Predecisional - Deliberative*

Each Agency is directed to notate the figures defined in this sheet and reflect them with additional context in their Phase 2 plans.

| Summary Data | 1/20 - 4/14/2025 | | 4/15 - 9/30/2025 | | FY26 | | FY27 | |
|---|---|---|---|---|---|---|---|---|
| FTE Actuals as of Jan 20, 2025 | 184 | | 179 | | | | | |
| FTE Actuals as of FY 2026 and FY 2027 | | | | | | | | |
| Anticipated Reduction in FTEs (Number) \| (% Reduction over previous year) | | | 117 (+3 DRP after 9/30/25) | 67% | | | | |
| **FTE Reductions Attributed to Specific Strategies** | | | | | | | | |
| Planned Hiring Freeze for Agency or Agency Subcomponents within FY (Yes/No) | Yes | | Yes | | | | | |
| VERA (Number) | Offering 15 | | Offering 15 | | | | | |
| VSIP (Number) | 0 | | 0 | | | | | |
| Regular Attrition (Number) \| (% Workforce) | 9 | 5% | | | | | | |
| RIFs/Terminations | 116 (RIF notices sent out | | 116 | | | | | |
| Probationary Employees | 9 | | | | | | | |
| Time Limited/Term/Reemployed Annuitants | 12 | | 12 | | | | | |
| Deferred Resignations (With or Without VERA) | 3 | | 3 | | | | | |
| Performance and Conduct Issues | 0 | | 0 | | | | | |
| Other Notable | | | 1 retirement as of 4/18/25 | | | | | |
| **Estimated Cost Savings** | | | | | | | | |
| FTE Salaries & Benefits | $ - | | $ 8,581,276 | | $ 20,128,345 | | | |
| Other Workforce Shaping Efforts | | | | | | | | |
| Number and Cost of GSA Occupancy Agreements and Direct Leases (Number) \| ($ Amount) | 1 | 0 (rent savings from entering new lease) | 1 | 0 | 1 | 745,586.10 | | |
| Contractor Employees (Number) \| ($ Amount) | | | | | | | | |
| Reduction of IT Software or Systems | | | | | | | | |
| **Estimated Spending** | | | | | | | | |
| Separation Costs (Severance, VSIP, Leave Payout, etc.) | | | TBD - ongoing | | | | | |
| Return to Office/Relocation Payments | | | | | | | | |
| New IT Software and Systems | | | | | | | | |

*Predecisional - Deliberative*

Supp.Add.028

# Attachment E



# NATIONAL ENDOWMENT FOR THE HUMANITIES

**OFFICE OF THE CHAIR**

April 8, 2025

**To:**       **Michael J. Mahoney, Office of Personnel Management**

**From:**    **Michael McDonald, Acting Chairman** *MMcD*

**Subject:**   **Establishment of Competitive Areas**

This memorandum serves as the National Endowment for the Humanities'(NEH) request for an exception to the competitive area 90-day rule. Please find the NEH responses below with regards to our competitive areas.

## 1. Identification of the proposed competitive area, including the organizational segment, geographic location, and limits of the local commuting area.

**Answer**: 1. National Endowment for the Humanities, nationwide, except for Washington, DC local commuting area (50-mile radius)

2. National Endowment for the Humanities, Washington DC

## 2. A description of how the proposed area differs from the one previously established for the same unit and geographic area.

**Answer**: Since our last RIF in 1995, we have added remote positions. Pursuant to President Trump's Presidential Memorandum, *Return to In-Person Work*, dated January 20, 2025, NEH discontinued its remote work policy. Therefore, competitive area #1 covers all employees who are located outside of the 50-mile radius of Washington, DC. Competitive area #2 covers all employees in the Washington, DC commuting area.

## 3. An organizational chart of the agency showing the relationship between the organizational components within the competitive area and other components in the commuting area.

**Answer**: Please see attached.

Supp.Add.030

**4. The number of competing employees in the proposed competitive area.**

**Answer**: The first competitive area includes 39 employees, and the second competitive area includes 118 employees.

**5. A description of the operation, work function, staff, and personnel administration of the proposed area and, where appropriate, a description of how the area is distinguished from others in these respects.**

**Answer**: Since NEH's last RIF in 1995, we have added remote positions. Pursuant to President Trump's Presidential Memorandum, *Return to In-Person Work*, dated January 20, 2025, NEH discontinued its remote work policy. Therefore, competitive area #1 covers these remote employees. Competitive area #2 covers all employees in the Washington, DC commuting area. As a small agency, our personnel administration is centralized to the Office of the Chairman. The Chairman is the only person who can make final determinations regarding personnel actions such as firing, hiring, restructuring, etc.

**6. A discussion of the circumstances that led to the proposed changes less than 90 days before a proposed reduction.**

**Answer**: NEH is responding to the Executive Order Implementing the President's Department of Government Efficiency Cost Efficiency Initiative – dated February 26, 2025.

400 7th STREET, SW, WASHINGTON, DC 20506 | NEH.GOV

Supp.Add.031



NEH Post RIF Org Structure

Case 3:25-cv-03698-SI     Document 96-1     Filed 05/13/25     Page 27 of 51

Supp.Add.032

# Attachment F



UNITED STATES OFFICE OF PERSONNEL MANAGEMENT

Washington, DC 20415

April 9, 2025

Derika Ferdinand Walker
Director of Human Resources
National Endowment for the Humanities
400 7th Street, SW
Washington, D.C.  20506

Dear Ms. Ferdinand Walker:

The U.S. Office of Personnel Management (OPM) approves the National Endowment for the Humanities (NEH) April 8, 2025, request for approval of a competitive area which will be in effect less than 90 days prior to the proposed effective date of a reduction in force (RIF).  Your request indicates that a RIF is necessary in the NEH due to the impact of an Executive Order titled, "Implementing the President's 'Department of Government Efficiency' Workforce Optimization Initiative" (February 11, 2025).  Section 3(c) of the EO states:

> (c) Agency Heads shall promptly undertake preparations to initiate large-scale reductions in force (RIFs), consistent with applicable law, and to separate from Federal service temporary employees and reemployed annuitants working in areas that will likely be subject to the RIFs.  All offices that perform functions not mandated by statute or other law shall be prioritized in the RIFs, including all agency diversity, equity, and inclusion initiatives; all agency initiatives, components, or operations that my Administration suspends or closes; and all components and employees performing functions not mandated by statute or other law who are not typically designated as essential during a lapse in appropriations as provided in the Agency Contingency Plans on the Office of Management and Budget website.  This subsection shall not apply to functions related to public safety, immigration enforcement, or law enforcement.

OPM approves your request in accordance with 5 CFR 351.402(c).  This provision requires OPM approval when a competitive area will be in effect less than 90 days prior to the effective date of a RIF.  The competitive areas proposed in your request were not previously established.  They comprise the groups mentioned in your request including their various divisions, offices, and units.  NEH must confirm and document that any competitive area established meets the definition for separate administration:

- The organizational unit or subdivision is separately organized;

- It is clearly distinguished from other units with regard to operation, work function, staff, and personnel management; and

**Supp.Add.034**

Page 2

- It has the authority to take or direct personnel actions (e.g., establish or abolish positions).

Also, please note, a RIF cannot be effectuated until 60 days from the date an employee receives their notice.   NEH should also review all applicable collective bargaining agreements for any additional requirements necessary to effectuate a RIF.

Please contact Katika Floyd by email at katika.floyd@opm.gov or phone at 202-606-9531 should you or staff have any questions with this response.

Sincerely,

KIMBERLY
HOLDEN

Digitally signed by KIMBERLY
HOLDEN
Date: 2025.04.09 11:07:58
-04'00'

Kimberly A. Holden
Principal Deputy Associate Director
Workforce Policy and Innovation

# Attachment G

 Outlook

---

**Agency Restructuring**

---

**From** Office of the Chair <chairsoffice@neh.gov>

**Date** Wed 4/9/2025 12:19 PM

**To** Office of the Chair <chairsoffice@neh.gov>

📎 1 attachment (298 KB)
Letter to NEH staff - Agency Restructuring.pdf;

Dear NEH staff,

Please see the attached letter from Acting Chairman McDonald.

Thank you,
Office of the Acting Chairman



## NATIONAL ENDOWMENT FOR THE HUMANITIES

OFFICE OF THE CHAIRMAN

April 9, 2025

Dear NEH Staff,

In accordance with President Trump's directives concerning the federal workforce, NEH is undertaking a multi-step approach to restructuring its internal organization. This restructuring will consolidate administrative and programmatic offices to enhance efficiency and streamline functions. As a result, the agency will be forced to reduce the total number of positions.

At this time, we cannot provide assurance regarding which positions will remain once the restructuring process is complete. However, if your position is affected, you will be afforded the appropriate civil service protections governing the Reduction in Force (RIF) process. Additional details will be provided as they become available.

Additionally, as part of this restructuring, the agency is rescinding the previously established return to office dates. All NEH employees who are not currently in an administrative leave or approved medical telework status, are required to report to work at the Constitution Center, on a full-time basis, five days per week, effective Monday, April 21, 2025.

If an employee decides not to report for in-person work, he/she should notify his/her supervisor as soon as possible.

NEH employees who previously requested exceptions to the return to the office effective date will be notified individually of the Acting Chairman's decision.

OPM has granted NEH the Voluntary Early Retirement Authority (VERA). All employees eligible to retire under VERA will be notified separately by the Office of Human Resources.

If you have any questions, please submit them to RTO Questions.

Michael P. McDonald
Acting Chairman

# Attachment I

 Outlook

---

**From the Office of Human Resources-NEH RIF Overview**

---

**From** Human Resources <humanresources@neh.gov>

**Date**  Fri 4/18/2025 3:19 PM

📎 1 attachment (325 KB)

RIF - Overview - April 18 (005).docx;

Dear colleagues,

Please see the attached memo from the Office of Human Resources.

Sincerely,

NEH Office of Human Resources





# NATIONAL ENDOWMENT FOR THE HUMANITIES

**OFFICE OF HUMAN RESOURCES**

April 18, 2025

Dear Colleagues,

As you know, in mid-March, The Department of Government Efficiency (DOGE) requested NEH to reduce the agency's workforce significantly.

Because we understand that some of you may have questions concerning the ongoing Reduction In Force (RIF) that NEH implemented in accordance with the President's February 11, 2025, Executive Order on workforce optimization and NEH's DOGE team, we are providing you with a brief overview of the RIF process, which we hope you find helpful.

### How NEH Conducted The RIF

NEH followed the Office of Personnel Management (OPM) RIF procedures and all applicable federal regulations in carrying out the RIF.

First, NEH identified and used two OPM-approved competitive areas: 1) National Endowment for the Humanities, nationwide, except for Washington, DC local commuting area (50-mile radius) and 2) National Endowment for the Humanities, Washington, DC.

Second, NEH carefully reviewed each employee's tenure, length of service, veteran's status, and performance records to determine placement rights to available positions.

NEH provided employees affected by the RIF with written notices in accordance with OPM's guidelines on April 10, 2025.  To do so, NEH used three touch points of communication: NEH emails, personal emails, and UPS mail based on the personal contact information provided in each employee's personnel record.

The Acting Chairman then authorized all employees who received RIF notices to be placed in an administrative leave status unless exceptions were made to support close

Supp.Add.041

out, mission-essential functions.

The RIF process will conclude on June 10, 2025, by which date all final employee separations will occur, unless otherwise specified by an amended RIF notice.

**Bump and Retreat Rights**

NEH has contacted employees who received RIF notices and were eligible for bump and retreat rights for the remaining agency positions in accordance with OPM guidance.

Bump and retreat rights are determined based on a combination of tenure group, service computation date, and previous position held. See Reduction in Force (RIF) Basics for further information.

The NEH Office of Human Resources (OHR) has worked closely with impacted individuals to explain these rights to them.

**Retirement and Early Retirement Options**

The Office of Personnel Management (OPM) granted NEH Voluntary Early Retirement Authority (VERA).

To be eligible for VERA, an employee must meet the following criteria:

- Age 50 with 20 years of creditable federal service, or
- Any age with 25 years of creditable federal service under the Federal Employees Retirement System with the adjusted eligibility this VERA program provides.

OHR has contacted employees who are VERA eligible and has offered benefit counseling and assistance with individual retirement estimates.

If you should have any retirement eligibility questions, please contact Renee Exton at rexton@neh.gov.

Additional Resources:

Severance Pay

Voluntary Early Retirement Authority

Owing to the challenges NEH employees are facing, OHR is drafting a follow-up FAQ document that it will send to all staff early next week.

The FAQ document will cover a range of topics and respond to questions that OHR has

received from employees affected by the RIF as well as from employees who are reporting back to the Constitution Center next week.

These FAQs will outline the process for employees who are part of the RIF to return to the Constitution Center to collect their belongings and will again address the process for being placed on NEH's rehiring priority list.

Because the RIF has significantly reduced the size of OHR, we ask for your patience as OHR responds to individual requests.

NEH continues to partner with our Employee Assistance Provider (EAP), which is available to you and your family members 24 hours a day, 7 days a week by calling 800-222-0364.

Thank you for your service.